**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

AUGUSTUS ALLEN, III,        )
                                   )
            Plaintiff,        )     Case No.  1:10-cv-126-SJM
      v.                    )
                                   )
ERIE METROPOLITAN TRANSIT   )
AUTHORITY, *et al.,*          )
                                 )
            Defendants.    )

## <u>MEMORANDUM OPINION</u>

McLAUGHLIN, SEAN J., District J.,

Plaintiff Augustus Allen, III, a former employee of the Erie Metropolitan Transit Authority ("EMTA"), filed this civil rights action after he was arrested and tried for allegedly making terroristic threats. The named Defendants are the EMTA and two of its employees, Aura Torres and Michael Will (collectively, the "EMTA Defendants"), the City of Erie and Erie Police Officer Thomas Borrelli (collectively, the "City Defendants"), and the County of Erie, Bradley H. Foulk (the now deceased former District Attorney of Erie County), and the Estate of Bradley H. Foulk (collectively, the "County Defendants").[1]

---

[1] Although some of these named Defendants are not included in the caption of the amended complaint, they are nevertheless identified as Defendants in the body of that document.  (See Amended Compl. [33] at ¶¶ 2-6.)  Since service has apparently been accepted on behalf of all of these parties, we will treat them for present purposes as named Defendants.  The complaint originally included the Commonwealth of Pennsylvania as a named Defendant, but Allen's claims against the Commonwealth were previously dismissed on the basis of Eleventh Amendment immunity.

This Court has subject matter jurisdiction over Allen's federal claims by virtue of 28 U.S.C. §1331 and 1343(c). Supplemental jurisdiction over Allen's related state law claims exists pursuant to 28 U.S.C. §1367(a).

Presently pending before this Court are motions by all of the named Defendants to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because all of the claims are time-barred, the motions will be granted and the claims will be dismissed with prejudice.

## I.      STANDARD OF REVIEW

When considering a motion under Rule 12(b)(6) to dismiss the complaint for failure to state a claim, we accept as true all allegations in the complaint and reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant. *Pocono Mountain Charter School v. Pocono Mountain School Dist.,* No. 10-4478, 2011 WL 3737443 at *2 (3d Cir. Aug. 25, 2011) (slip copy) (citing *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989)). On the other hand, "a court need not credit a plaintiff's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir.1997) (*citing In re: Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir.1997))."To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, —— U.S. ——, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II.    BACKGROUND[2]

Allen is a resident of Erie County and former employee of EMTA.  On April 26, 2007, while present in the lunchroom of the EMTA premises, Allen was overheard by Defendant Aura Torres stating to another fellow worker, "I'll come back to this place with my AK-47 and shoot this fucking place up." (Amended Complaint ¶13.)  At the time he made this statement, Allen was referring to the fact that EMTA had installed cameras within the workplace including in the private areas of the lunchroom near employee restrooms.  (*Id.* at ¶18.)

On April 26, 2007, Allen was arrested at his church by a team of Erie police officers, including Defendant Borrelli, who entered the church and took Allen into custody in handcuffs within view of other church attendees and members of the public. (Amended Compl. at ¶ 12.)  Allen was arrested and charged based solely upon the allegations of Torres and her interpretation of Allen's statement as a bona fide threat. (*Id.* at ¶ 14.)  Prior to arresting Allen, Borrelli did not interview Gary Laughner, the individual to whom Allen had been speaking at the time of the alleged threat, nor did Borrelli conduct any type of investigation to ascertain whether, in fact, Allen owned or possessed a firearm.  (*Id.* at ¶¶ 15-16.)

According to the amended complaint, EMTA had "expressly targeted" Allen for termination and it utilized Allen's purported workplace threat as a pretext for terminating his employment.  (Amended Compl. at ¶ 22.)In addition, it is averred that "EMTA proceeded to purposely suppress and destroy the material evidence contained in the

_____

[2]The following averments are taken from the amended complaint.  In conformity with the foregoing standard of review, we accept as true all of Allen's well-pleaded factual allegations and draw all reasonable inferences arising therefrom in his favor.

videotaping system by sending the tapes to an outside contractor for destruction without notice to the Plaintiff when EMTA knew or should have known this evidence was of material import to the pending criminal case against the Plaintiff." (*Id.* at ¶ 19.)

Allen contends that both the police and the District Attorney's office were aware of, and did nothing to prevent, the destruction of the evidence and thereby implicitly consented to its destruction. (Amended Compl. at ¶ 20.) Allen further claims that he was not informed of the destruction of the evidence until the time of his trial. (*Id.* at ¶21.)

In May of 2008, Allen's criminal case proceeded to a jury trial in the Erie County Court of Common Pleas. (Amended Compl. at ¶ 28.) At the conclusion of the Commonwealth's case-in-chief, the trial judge granted Allen's motion for a judgment of acquittal. (*Id.*)

Allen later commenced this action on May 21, 2010. In response to the original complaint, the Defendants moved for dismissal on several grounds, including their claim that Allen's claims were barred by the applicable statute of limitations.

This Court held argument on March 21, 2011, at which time Allen contended that the period of limitations had been tolled by his own incapacitation. Based on this development, this Court denied the Defendants' motions to dismiss without prejudice to be reasserted later and allowed Allen an opportunity to replead his complaint. The Court directed that the amended complaint should include, among other things, averments detailing the nature, extent, and onset date of Allen's alleged mental incapacity, as well as any treatment(s) received.

Allen filed his amended complaint [33] on April 6, 2011. In it, he alleges that he:

4

was medically incapacitated commencing November 2009 due to a stroke. Upon the onset of Plaintiff's disability, he was placed under [a] physician's care and was prescribed antidepressants which caused him to be suicidal. Plaintiff's disabling condition lasted at least a month. The statute of limitations as applied [to] this lawsuit was tolled or suspended for the duration of this period of disability, if not longer.

(Amended Compl. at ¶ 32.) The amended complaint sets forth six causes of action, including a claim for the alleged violation of Allen's federal constitutional rights (Count 1) as well as claims under Pennsylvania law for alleged false arrest (Count 2), malicious prosecution (Count 3), false imprisonment (Count 4), and intentional infliction of emotional distress (Count 5). Count 6 involves a claim for punitive damages (Count 6).

All of the Defendants have moved to dismiss the amended complaint in part or in whole. The issues have been briefed and are now ripe for consideration.

## III.    DISCUSSION

### A.    Allen's Federal Claims

Plaintiffs' federal claims are asserted pursuant to 42 U.S.C. § 1983, which affords a private right as against:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…

This statute does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

To prevail under 42 U.S.C. § 1983, a plaintiff must prove that s/he suffered the deprivation of a constitutional or federal rights by a person acting under color of state

law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995). Here, Allen is

alleging violations of his rights under the Fourth and Fourteenth Amendments to the

U.S. Constitution – specifically, his right to be free from "unlawful arrest, detention and

imprisonment," which we construe as asserting federal claims premised upon false

arrest, false imprisonment, and malicious prosecution. (Amended Compl. at ¶ 42.)

Although it is not directly stated within Count 1, Allen also appears to be asserting a

§1983 claim based upon the alleged destruction of material and exculpatory evidence.

(*Id.* at ¶ 34.)[3]

Defendants have asserted numerous bases for the dismissal of Allen's federal

claims. However, because we find the Defendants' arguments relative to the statute of

limitations[4] to be dispositive, we need not reach their other arguments for dismissal.

The statute of limitations for a § 1983 claim is governed by the personal injury

tort law of the state where the cause of action arose. *Kach v. Hose,* 589 F.3d 626, 634

---

[3] The amended complaint may further be read as alleging a violation of Allen's due process rights by virtue of a loss of liberty and damage to his reputation (Amended Compl. at ¶ 44), as well as a §1983 claim premised upon unlawful search and seizure. (Id. at ¶ 34.) Allen seems to have abandoned these claims but, in any event, we conclude that they cannot survive the present Rule 12(b)(6) challenge because, like Allen's other federal claims, they would be time-barred.

[4] Our Circuit Court of Appeals has noted that "[w]hile the language of Fed R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Kester v. Zimmer Holdings, Inc.*, No. 2:10-cv-00523, 2010 WL 2696467 at *15 (W.D. Pa. June 16, 2010) (slip op.) *(quoting Oshiver v. Levin, Fishbein, Sedran& Berman,* 38 F.3d 1380, 1385, n. 1 (3d. Cir.1994) (internal citations omitted)). *See also Riley v. Medtronic, Inc.*, Civil Action No. 2:10-01071, 2011 WL 3444190 at *5 (W.D. Pa. Aug. 8, 2011). "[W]here a [c]omplaint is untimely on its face, … the plaintiff must include tolling allegations in order to survive a statute of limitations." *Akrie v. City of Pittsburgh*, Civil Action No. 8-1636, 2009 WL 1765846 at *4 (W.D. Pa. June 22, 2009) (slip op.) (*citing Oshiver, supra*, at 1391 n. 10).

Here, the untimeliness of Allen's various claims is apparent from the allegations in the amended complaint and/or by reference to dates contained in the judicial record from his criminal proceeding, which we can consider on a Rule 12(b)(6) motion. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (in ruling on a motion to dismiss, a district court may rely on matters of public record, include judicial proceedings) (citations omitted). We therefore consider the applicable statutes of limitations as they pertain to both Allen's federal claims and his state claims.

(3d Cir. 2009) (*citing Wallace v. Kato*, 549 U.S. 384, 387 (2007)).  For § 1983 claims arising in Pennsylvania, the applicable limitations period is two years. *Id.* (citing 42 Pa. Cons. Stat. §5524(2) and *Kost v. Kozakiewicz*, 1 F.3d 176, 189-90 (3d Cir.1993)).

The date on which a cause of action under § 1983 accrues is determined by federal law.  *Kach,* 589 F.3d at 634 (*citing Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir.1991)).  Under federal law a §1983 claim accrues, and the statute of limitations begins to run, "when the plaintiff knew or should have known of the injury upon which its action is based."  *Id.* (*quoting Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir.1998) (citation omitted); *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir.1998)).  Determining the date of accrualinvolves an objective inquiry: "[courts] ask not what the plaintiff actually knew but what a reasonable person should have known."  *Id.* (*citing Barren v. United States*, 839 F.2d 987, 990 (3d Cir.1988)). Generally, a cause of action is considered to have accrued "at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury."  *Id.* (*citing United States v. Kubrick*, 444 U.S. 111, 120 (1979)).  As our appellate court has explained,

> [t]he cause of action accrues even though the full extent of the injury is not then known or predictable. Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief.

*Kach, supra,* at 634-35 (*quoting Wallace*, 549 U.S. at 391 (internal quotation marks and citations omitted)).  Applying this principle to the case at bar, we conclude that all of Allen's §1983 claims were filed beyond the applicable limitations period.

For Fourth Amendment claims premised upon theories of false arrest or false imprisonment, the two-year limitations period begins to run "at the time the claimant becomes detained pursuant to legal process." *Green v. United States,* 418 Fed. Appx.63, 67 (3d Cir. Mar. 18, 2011)(quoting *Wallace v. Kato,* 549 U.S. 384, 397 (2007)). Thus, the statute of limitations as to those claims commenced when Allenappeared before the Magistrate Judge in his preliminary hearing and was bound over for trial or arraigned on his criminal charges. *Baker v. Wittevrongel*, 363 Fed. Appx. 146, 150 (3d Cir. Jan. 29, 2010); *Green,* 418 Fed. Appx. at 67 (citing *Wallace, supra,* at 391). According to the official court docket in *Commonwealth v. Allen,* Case No. 1687 of 2007 (Erie County C.C.P), the preliminary hearing occurred on July 6, 2007, meaning the statute of limitations relative to Allen's federal false arrest/ false imprisonment claimsexpired, at the latest,on or about July 6, 2009. Since the instant action was filed well past that date, it is untimely as to those claims.

Allen also seems to be asserting a Fourth Amendment claim based upon a theory of malicious prosecution. As to this type of §1983 claim, the two-year limitations period does not accrue until the underlying criminal charges are terminated in the plaintiff's favor. *Crawford v. Miller,* 269 Fed. Appx. 178, 180 (3d Cir. Mar. 20, 2008) (citing *Rose v. Bartle,* 871 F.2d 331, 348 (3d Cir. 1989)). Thus, Allen's malicious prosecution claim accrued on May 15, 2008 when he was awarded a judgment of acquittal, meaning the applicable statute of limitations expired no later than May 15, 2010. The instant action was not filed until May 21, 2010, however, making Allen's §1983 malicious prosecution claim untimely.

To the extent Allen is asserting a due process claim premised upon the alleged destruction of potentially exculpatory evidence, we note court documents from Allen's criminal case showing that his attorney was advised -- via correspondence from the District Attorney's Office dated November 26, 2007 and received on or around December 2, 2007 -- that EMTA was no longer in possession of any electronic surveillance that may have existed covering the alleged terroristic threat incident. This correspondence in turn prompted Allen's counsel to subpoena information directly from EMTA in January of 2008 and, later, to file a motion with the Court of Common Pleaon February 22, 2008 to compel EMTA's production of information concerning such evidence.[5] (See Ex. C to Def.'s Mot. to Dismiss Compl. [35-3] at pp. 1-8.) Thus, as early as December 2, 2007 and certainly no later than February 22, 2008, Allen knew or should have known of the facts giving rise to his claim that potentially exculpatory evidence had been destroyed by EMTA. This would mean that the statute of limitations relative to this claim expired as early as December 2, 2009, and no later than February 22, 2010, some three months prior to the filing of the complaint.[6]

---

[5]  The attorney in Allen's criminal case, Jeff Connelly, Esq., is the same attorney who initially represented Allen in the instant litigation and filed the complaint on May 21, 2010.

[6] The same result obtains to the extent Allen is asserting a § 1983 claim premised upon alleged violations of his due process rights. Since Allen received all of the process to which he was entitled in connection with his criminal case, the basis for such a claim is unclear. In any event though, it would appear that any due process claim premised upon loss of liberty accrued no later than April 26, 2007 when, according to the official court docket in Allen's criminal case, he posted bail and was released from custody. With respect to Allen's due process claim (if any) premised upon reputational harm, we note, based on the court docket, that Allen was arrested on April 26, 2007, bound over for trial on July 6 2007, and charged by information on August 13,2007. Accordingly, it would appear that such a claim, if it were being asserted, accrued no later than August 13, 2009. Both types of due process claims thus accrued more than two and one-half years prior to the filing of this lawsuit.

Allen has asserted a number of different theories as to why his § 1983 claims should be considered timely, notwithstanding the expiration of the limitations period. None of these arguments is persuasive.

(i)

First, Allen has averred that the period of limitations was tolled during his period of incapacitation following a stroke which he suffered in November of 2009. Because this alleged period of disability occurred after the 2-year limitations period had already expired relative to Allen's §1983 claims premised upon alleged false arrest and/or imprisonment, his alleged disability clearly cannot save those claims.

Even with respect to his other §1983 claims, however, Allen's averments as to his medical incapacity are presently insufficient. In his amended complaint, Allen avers that he suffered a stroke in or around November of 2009,[7] was placed under a physician's care, and was prescribed medication which made him depressed and suicidal, resulting in a disabling condition which lasted at least one month. (Amended Compl. at ¶ 32.) Allen contends that the Court should view these factual assertions of alleged medical disability as "an extraordinary event which prevented [him] from asserting his rights" for purposes of equitable tolling. (Br. in Supp. of Pl.'s Mot. to Amend his Complaint [42] at p. 2.) He submits that we should defer ruling on the Defendants' pending motions and permit him to procure medical documentation substantiating his claim of medical incapacity.

_____

[7] We note that Allen's brief in opposition to the pending motions suggests that the stroke occurred in November of 2007. For present purposes, we accept the averment in the amended complaint as controlling.

10

Our Circuit Court of Appeals has held that equitable tolling is appropriate where (1) a defendant actively misleads a plaintiff with respect to her cause of action; (2) the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) the plaintiff asserts her claims in a timely manner but has done so in the wrong forum. *See Lake v. Arnold*, 232 F.3d 360, 370 n. 9 (3d Cir.2000). The remedy of equitable tolling is considered extraordinary and should be extended only "sparingly." *Kach, supra,* at 645 (citing *Santos v. United States,* 559 F.3d 189, 197 (3d Cir. 2009)).

Here, Allen's averments as to his alleged medical incapacity, as presently stated, are insufficient to warrant application of federal equitable tolling principles. By his own account, Allen claims to have suffered a stroke sometime in November 2009, after which he was hospitalized only for one week, months before the statute of limitations expired on his malicious prosecution and destruction-of-evidence claims and months before the complaint was filed. Thus, Allen's relatively brief hospitalization in 2009 did not provide grounds to toll the period of limitations.

Allen further claims to have experienced a period of disabling depression following his hospitalization which lasted at least a month, but this factual assertion, even if credited, also fails to establish a basis for equitable tolling. Our Court of Appeals has held that "mental incompetence is not *per se* a reason to toll the statute of limitations in federal actions." *Lake v. Arnold,* 232 F.3d 360, 371 (3d Cir. 2000) (citing *Barren v. United States,* 839 F.2d 987 (3d Cir. 1988) (rejecting mental incompetence as a reason to toll the statute of limitations in a Federal Tort Claims Act)). In *Lake,* our court of appeals recognized a very limited situation in which a plaintiff's

11

mental disability could serve as a basis for equitable tolling; however, the facts of that case are so readily distinguishable from our own as to make the court's ruling in Lake totally inapplicable here.

*Lake* involved a situation where a mentally retarded woman and her husband sued under §1983 for civil rights violations stemming from the woman's allegedly nonconsensual sterilization, at the direction of her father and step-mother, when the woman was sixteen years-old. After the trial court dismissed the federal claims on statute-of-limitations grounds, the Third Circuit Court of Appeals remanded for further factual development, finding that federal equitable tolling principles might apply in that case. As the Court of Appeals has since explained, however, this limited holding was premised upon three unique factors: (1) the plaintiff's mental disability "motivated, to some degree, the injury that (s)he sought to remedy," *see Kach,* 589 F.3d at 644 (quoting *Lake,* 232 F.3d at 371); (2) the plaintiff's suit was "predicated in no small part by her membership in a protected class," *id.*at 644-45 (citing *Lake, supra,* at 369-70); and (3) a possibility existed that the plaintiff's guardians may have conspired to deprive her of her constitutional and civil rights. *Id.* at 645 (citing *Lake, supra,* at 371-72). So unique were these circumstances that the Third Circuit has referred to *Lake* as "*sui generis* in its application of federal tolling." *Kach,* 589 F.3d at 644.

None of the factors which supported equitable tolling in *Lake* exist here. Unlike in *Lake,* where the plaintiff's mental retardation actually played a role in motivating the violation of her rights (i.e., nonconsensual sterilization), Allen's alleged depression is totally unrelated to his alleged claims of malicious prosecution and due process violations. Further, any disability which Allen suffered as a result of being suicidal did

not serve as a predicate to this lawsuit; his claims are not being brought by him in his capacity as a disabled person but as an individual who was allegedly wrongfully arrested and prosecuted for a crime he did not commit. Finally, there is no allegation that Allen's disability ever resulted in the appointment of a guardian, much less that his guardian(s) conspired to deprive him of his rights.

Other federal cases support the conclusion that equitable tolling on the basis of mental disability is reserved for extraordinary cases, such as situations where the disabled individual has been adjudicated incompetent, has been institutionalized, or is ill to the point that attorney-client relations are impaired. *See, e.g., Lyons v. Potter,* 521 F.3d 981, 983 (8th Cir.2008) ("Courts that have allowed equitable tolling based on mental illness have done so only in exceptional circumstances, such as where the complainant is institutionalized or adjudged mentally incompetent.") (citations omitted); *Barrett v. Principi,* 363 F.3d 1316, 1321 (Fed. Cir. 2004) (to obtain equitable tolling in veterans' appeals cases, a veteran must show that the failure to file was the direct result of a mental illness that rendered him incapable of "rational thought or deliberate decision making," … or "incapable of handling (his) own affairs or unable to function (in) society"; a medical diagnosis alone or vague assertions of mental problems will not suffice and, if veteran is represented by counsel during the relevant period, he must make an additional showing that the mental illness impaired the attorney-client relationship) (internal citations omitted); *Miller v. Runyon,* 77 F.3d 189, 191 (7th Cir. 1996) (noting the "traditional rule that mental illness tolls a statute of limitations only if the illness in fact prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them.") (citing cases); *Biester v. Midwest*

13

*Health Servs.,* 77 F.3d 1264, 1267-68 (10th Cir.1996) (no exceptional circumstances existed to justify equitable tollingwhere there was no allegation that the plaintiff was ever adjudged incompetent or institutionalized); *Lopez v. Citibank, N.A.,* 808 F.2d 905, 907 (1st Cir.1987) (Breyer, J.) ("[W]e believe a federal court should assume that the mental illness was not of a sort that makes it equitable to toll the statute --at least absent a strong reason for believing the contrary.") (citation omitted)*; Sullivan v. Doe*, Civil Action No. 07-2092, 2008 WL 4083176 at *7 (E.D. Pa. Aug. 28, 2008) (in evaluating whether mental incompetence can serve as a basis for equitable tolling in the context of habeas corpus cases, courts consider:  (1) whether the petitioner was adjudicated incompetent and, if so, when this occurred in relation to the limitations period, (2) whether the petitioner was institutionalized for his mental impairment, (3) whether the petitioner handled or assisted in other legal matters during the limitations period, and (4) whether the petitioner has supported his allegations of impairment with extrinsic evidence; noting it is "clear that '(b)ald and unsupported claims of incompetency are insufficient to present a viable basis for equitable tolling.'") (citation omitted).  *C.f. Eubanks v. Clarke,* 434 F. Supp. 1022 (E.D. Pa. 1977) (equitable tolling applied for mentally incompetent plaintiff who had been involuntarily committed for the entire limitations period).

Here, Allen has not alleged facts which would warrant application of equitable tolling principles based on his alleged medical or mental disability.  This is particularly true given the fact that Allen was represented by counsel at the time he commenced this action – the same attorney, in fact, who represented him in his underlying criminal proceedings.  Although Allen has asked for more time in which to obtain the medical records necessary to establish more precise averments regarding his mental disability,

14

he has already been given one opportunity to amend his complaint and he has had more than sufficient time in which to obtain the necessary supporting documentation. No reason has been stated as to why he could not have obtained the relevant mental health care records prior to this point in time.

(ii)

Allen next argues that his claims should not be considered time-barred because he served a timely "Notice of Intent to Sue" upon the named Defendants following his acquittal in the criminal case. Since timely notice was given to the Defendants, Allen reasons, they cannot claim to have been prejudiced by his delay in commencing this action.

In support of this proposition, he cites *Varlack v. SWC Caribbean, Inc.,* 550 F.2d 171, 175 (3d Cir. 1977); however, Allen's reliance on that case is misplaced. *Varlack* in no way stands for the proposition that the timely service of a "Notice of Intent to Sue" – which is a prerequisite for recovery under the Pennsylvania Political Subdivision Tort Liability Act – is a legally sufficient alternative to the timely filing of a civil action for statute-of-limitations purposes. Rather, *Varlack* addressed the issue of whether a plaintiff's amendment to his complaint – i.e, by replacing a "John Doe" defendant with the party's real name -- would relate back to the date on which the complaint was originally filed, thereby rendering the amendment timely notwithstanding the fact that the statute of limitations had expired prior to the date of the amendment. The court in *Varlack* found that substituting the defendant's real name constitutes "changing a party" within the meaning of Federal Rule of Civil Procedure 15(c) and, therefore, the

15

amendment would relate back to the filing date of the original complaint only if the conditions of Rule 15(c) were met.  550 F.2d at 174.  Those conditions require, among other things, that "the party to be brought in by amendment:  (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).  The district court ruled that those conditions had been met and, on appeal, the Third Circuit found no clear error in this ruling, as there had been evidence establishing that the defendant in question had seen a "paper" (apparently a copy of the complaint) prior to the expiration of the limitations period which had provided the requisite notice about the filing of the lawsuit and the fact that he was intended to be a named defendant.  *Id.* at pp. 174-75.

Clearly, a prerequisite to the application of Rule 15(c)(1)(C), as in *Varlack,* is the timely filing of a complaint during the relevant limitations period – an event which did not occur here.  Allen has cited no authority (and we are aware of none) which establishes that sending a party a Notice of Intent to Sue can somehow toll the applicable limitations period under § 1983 or allow a belatedly filed § 1983 action to relate back to the time at which the "notice" was served.  Accordingly, this line of argument lacks merit.

(iii)

Allen also contends that equitable tolling should apply because the named Defendants are alleged to have engaged in the destruction of evidence.  More specifically, Allen asserts that EMTA destroyed "material exculpatory evidence contained in the videotaping system" (Amended Complaint ¶ 19) and that both the Erie Police Department and the Office of the District Attorney were aware of EMTA's actions

16

but neither one took action to prevent it or advised him of it until time of trial.  (Amended Complaint at ¶¶ 20-21).  Allen insists that, based on this alleged misconduct, the Defendants should be viewed as having sought to mislead him, and the statute of limitations should be equitably tolled.  Again, the argument lacks merit.

Equitable tolling is appropriate "only when the 'principles of equity would make the rigid application of a limitation period unfair.'"  *Jones v. Morton,* 195 F.3d 153, 159 (3d Cir. 1999) (quoting *Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1998)).  Such unfairness generally occurs "when the petition has 'in some extraordinary way … been prevented from asserting his or her rights.'"  *Id.* (*quoting Miller, supra*, at 618) (ellipsis in the original). This includes situations where, for example, the defendant has actively misled the plaintiff.  *See id.* (quoting *United States v. Midgley,* 142 F.3d 174, 179 (3d Cir. 1998)).  Even then, the plaintiff must show that he "exercised reasonable diligence in investigating and bringing [the] claims…  Mere excusable neglect is no sufficient."  *Id. (quoting Miller, supra*, at 618-19) (alteration and ellipsis in the original) (internal quotations omitted).

Allen's allegations concerning the destruction of evidence fail to meet these standards.  First, there is no averment of him being "actively misled" by any Defendant other than EMTA.  The trial court in Allen's criminal case has already ruled that the District Attorney's office did not have custody or control over the evidence in question (see Ex. E to Def.'s Mot. to Dismiss Amended Compl. [35-5]) and, moreover, there was no affirmative legal duty on the part of the District Attorney's office or the Erie police to advise Allen concerning the loss of such evidence.

17

More fundamentally, the alleged loss of evidence did not prevent Allen from asserting his §1983 claims in a timely fashion. As we have observed, official court records from Allen's criminal case show that his counsel was informed of the loss of the videotaped footage as early as December 2007 (*see* Ex. C to Def.'s Motion to Dismiss Amended Compl. [35-3] at p. 7), yet Allen's federal cause of action based on malicious prosecution did not even begin to accrue until months later, on May 15, 2008. The alleged destruction of supposedly exculpatory evidence is, therefore, totally unrelated to Allen's untimely assertion of his malicious prosecution claim.

To the extent Allen is now asserting a § 1983 claim premised on the theory that his due process rights were violated as a result of the lost evidence, such a claim would not accrue under Pennsylvania's "discovery rule" until Allen knew or should have known of the factual basis for his claim. Because Allen's counsel was informed no later than December 2007 that the footage had been lost, the due process claim could not have accrued any later than that date, which is still of no benefit to Allen because he did not commence this action until almost two and one-half years later. Again, the loss of the videotape evidence played no role in hindering Allen's ability to timely vindicate his rights since the lost evidence serves as the very basis for this claim.

As for Allen's federal claims premised upon false arrest and false imprisonment, the availability of the lost video footage was not a prerequisite to asserting those claims, and the absence of such evidence therefore did not make Allen any less aware of the legal and factual bases for his false arrest/ false imprisonment claims. At most, the lost footage merely made his false arrest and false imprisonment claims harder to prove. In any event, Allen was aware as of December 2007 of the lost evidence, and the statute

18

of limitations relative to the false arrest/ false imprisonment claims expired no later than July 6, 2009, which means that Allen had some eighteen months within which to file suit relative to those claims, yet he failed to do so. Consequently, Allen cannot show that he exercised the "reasonable diligence" in investigating and bringing his claims that is required for equitable tolling. *Jones, supra,* at 159.

(iv)

Finally, Allen argues that we should defer ruling on the pending motions to dismiss and allow him to proceed to discovery, as this would put himin a "better position" to determine

> whether the allegations contained in Paragraphs 22, 23, 24 and 25 [of the amended complaint] establish[ ] a pretext on the part of EMTA and its employees, Defendant Aura Torres, and Michael Will, a supervisor, to have Plaintiff wrongfully terminated with EMTA in possible violation of Title VII and 42 U.S.C. §1981(b) and §1983.

(Br. in Supp. of Pl.'s Mot. to Amend [42] at p. 2.) In other words, Allen seems to be arguing that we should overlook the belated filing of this lawsuit in order to provide him an opportunity to discover whether he was possibly fired in violation of the federal employment laws. We are unaware of any authority which would support extending the applicable statute of limitations period on this basis, and we decline to do so here.

In sum, Allen's federal civil rights claims were clearly filed beyond the applicable 2-year statute of limitations periods, as is evident from his own averments, coupled with our reference to the official court record from his criminal proceedings. Further, Allen has not met his burden of pleading circumstances which would justify our application of equitable tolling. *See Kach,* 589 F.3d at 645 (recognizing that the plaintiff has the "burden of showing that this is one of those extraordinary cases warranting the

application of any federal equitable tolling provision"). Accordingly, Allen's averments, as set forth in the Amended Complaint, are insufficient to survive the pending Rule 12(b)(6) motions.

B. <u>Allen's State Law Claims</u>

The Defendants have also moved to dismiss Allen's state law claims, arguing that these claims are also barred by the applicable Pennsylvania statute-of-limitation as well as the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S.A §§ 8541 *et seq.*. At issue are Allen's causes of action for false arrest (Count 2), malicious prosecution (Count 3), false imprisonment (Count 4), intentional infliction of emotional distress (Count 5) and punitive damages (Count 6).

Allen's state law claims for false arrest, false imprisonment, and malicious prosecution are subject to a two-year statute of limitations period. See 42 Pa. C.S.A. §5524; *Acquilino v. Phil. Catholic Archdiocese*, 884 A.2d 1269, 1275 (Pa. Super. 2005); *Ash v. Continental Ins. Co*., 861 A.2d 979; *M.R. Mikkilineni v. Amwest Surety Ins. Co.,* 919 A.2d 306 (2007). The parties appear to dispute whether Allen's claim for intentional infliction of emotional distress is subject to the 2-year statute of limitations applicable generally to personal injury torts, *see* 42 Pa. C.S. §5524, *Acquilino, supra,* at 1275, or the 6-month statute of limitations relative to claims arising out of willful misconduct by a government official. *See* 42 Pa. C.S.A. §5522(b)(1); *Stoppie v. Johns*, 720 A.2d 808 (Pa. Commw. 1998). However, even assuming for the sake of argument that the 2-year period applies, this claim is also time-barred.

Under Pennsylvania law, a statute of limitations period generally begins to run when a cause of action accrues; *i.e.*, "when an injury is inflicted and the corresponding right to institute a suit for damages arises." *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011) (citing *Wilson v. El–Daief*, 964 A.2d 354, 361 (Pa. 2009)). "It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform him-or herself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period." *Id*. (*citing Hayward v. Medical Center of Beaver County*, 608 A.2d 1040, 1042 (Pa.1992)). "Generally, once the prescribed statutory period has expired, the complaining party is barred from bringing suit." *Id*. (*citing Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 608 A.2d 1040, 1043 (Pa.1992)).

"However, Pennsylvania recognizes the discovery rule, which may toll the statute of limitations if a plaintiff is 'unable, despite the exercise of reasonable diligence, to discover the injury or its cause.'" *Kester v. Zimmer Holdings*, 2010 WL 2696467, *15 (W.D. Pa.2010) (*citing Mest v. Cabot Corp*., 449 F.3d 502, 510 (3d. Cir.2006) (*quoting Pocono Intl' Raceway, Inc. v. Pocono Produce*, 468 A.2d 468, 471(Pa.1983))). Under the discovery rule, the statutory period "does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he has been injured and (2) that his injury has been caused by another party's conduct.'" *Id*. (*citing Mest v. Cabot Corp*., 449 F.3d 502, 510 (3d. Cir.2006) (*quoting Debiec v. Cabot Corp*., 352 F.3d 117, 129 (3d Cir.2003))). The plaintiff "bears the burden of demonstrating that he exercised reasonable diligence in determining the existence and cause of his injury." *Mest v. Cabot Corp*., 449 F.3d 502, 511 (3d. Cir.2006) (*citing Cochran v. GAF Corp*., 666 A.2d 245, 249 (Pa.1995)).

Reasonable diligence does not refer to what the plaintiff actually knew about his injury, but rather, "'what might he have known, by the use of the means of information within his reach, with the vigilance the law requires of him?'" *Fine v. Checcio*, 870 A.2d 850, 858 (Pa.2005) (citation omitted).

In this case, the discovery rule does not serve to toll the running of the statute of limitations because Allen was aware of all the facts giving rise to his various claims for false arrest, false imprisonment, malicious prosecution and intentional infliction of emotional distress. "[T]he very essence of the discovery rule in Pennsylvania is that it applies only to those situations where the nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect an injury." *Wilson v. El–Daief*, 600 Pa. 161, 964 A.2d 354, 357 (Pa.2009) (quoting Dalrymple v. Brown, 549 Pa. 217, 701 A.2d 164, 170 (Pa.1997)). Such is not the case here, where the factual bases for Plaintiff's various tort claims were obvious to him, as evidenced by the fact that he admittedly sent the Defendants a "Notice of Intent to Sue" immediately following his acquittal. (Amended Compl. at ¶ 33.)

Moreover, the principles of equitable tolling, such as we have previously discussed in connection with Allen's §1983 claims, are federal principles not applicable to claims under Pennsylvania law. *See Mosley v. Settles,* 779 A.2d 1208 (Pa. Super. Ct. 2001) (declining to recognize a "non-negligent circumstances" standard for extending the limitations period for personal injury claims). It has been said that Pennsylvania law recognizes equitable tolling where either (1) the discovery rule applies or (2) the defendant is estopped from relying on the limitations period due to fraud or its equivalent. *Young v. Local 1201, Firemen & Oilers Union,* Civil Action No. 07-3576,

2009 WL 3152119 at *8 (E.D. Pa. Sept. 25, 2009) (citing *Wilson v. El Daief*, 964 A.2d 354, 359 (Pa. 2009); *Molineux v. Reed*, 532 A.2d 792, 794 (Pa. 1987)). *See also Aivazoglou v. Drever Furnaces*, 613 A.2d 595, 598 (Pa. Super. 1992) ("[A]bsent fraud or its equivalent, judicial extensions of time are expressly prohibited by Section 5504 of the Judicial Code.") (citing *Commonwealth v. Liptak*, 573 A.2d 559 (Pa. Super. 1990)). For the reasons we have previously discussed, neither basis applies here. Accordingly, Allen's state law claims are time-barred and will be dismissed. As a result, his claim for punitive damages must be dismissed as well.

## IV. CONCLUSION

Our Circuit Court of Appeals has instructed that, "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir.2008)). Here, the only possible basis for further amendment pertains to Allen's assertion that his claims should be equitably tolled due to his prior mental disability. I find that further amendment along this line would be futile as to Allen's §1983 claims premised upon false arrest and false imprisonment, since the alleged period of disability arose after the applicable statute of limitations had already expired and cannot toll those claims.[8] Further amendment is also futile with respect to Allen's state law claims, since Pennsylvania does not appear to recognize the doctrine of equitable tolling in the context of an alleged mental disability.

---

[8] The same would be true with respect to any claim premised upon an alleged due process violation due to loss of liberty or reputation. The limitations period for such claims would likely have expired prior to November 2009 when the alleged period of disability commenced.

23

With regard to Allen's §1983 due process claim premised upon the alleged destruction of exculpatory evidence, further amendment would be futile because, in any event, Allen cannot establish a due process violation given his judgment of acquittal. *See Morgan v. Gertz*, 166 F.3d 1307, 1310 n. 1 (10th Cir. 1999) ("Regardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial."); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998) (plaintiff who was never convicted cannot claim "the protections of Brady"); *Leone v. Twp. of Deptford*, 616 F. Supp. 2d 527, 535 (D.N.J. 2009) ("It is axiomatic that a finding in [a defendant's] favor demonstrates that he received the process that he was due."). *See also* Conditional Rules in Criminal Procedure:  Alice in Wonderland Meets the Constitution, 26 Ga. St. U. L. Rev. 417, 509 (2010) (noting that, in situations where the defendant is acquitted, "there is literally no Brady violation about which to complain.").

Finally, with regard to Allen's §1983 claim premised upon malicious prosecution, further amendment would likely be futile considering Defendants' representation that Allen signed a verification form on or around May 7, 2010 in connection with his original complaint, suggesting that, within the latter part of the limitations period, he was aware of his perceived legal rights and competent to the point of conducting his legal affairs and working with his attorney.  Even if further amendment would not be futile, however, I find that it would be inequitable.  Allen's original civil attorney in this matter is the same attorney who represented him in his underlying criminal proceedings, and both parties were aware or should have been aware of Allen's malicious prosecution claim as of May 15, 2008.  Allen had ample time to assert that claim before his alleged period of

disability but did not do so.  Moreover, this Court gave him an opportunity already to amend his complaint so as to allege circumstances that might justify equitable tolling, but his averments were insufficient in light of controlling legal principles.  Although Allen has asked for more time to secure mental health records in support of his disability claim, no reason has been given as to why those records could not have been previously obtained.  Allen has not demonstrated diligence in prosecuting his various civil claims, and further prolonging of this litigation would therefore be inequitable under all the circumstances.

Based upon the foregoing reasons, the claims set forth in the Amended Complaint will be dismissed with prejudice.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

AUGUSTUS ALLEN, III,       )
                              )
          Plaintiff,      )     Case No.  1:10-cv-126-SJM
      v.                 )
                              )
ERIE METROPOLITAN TRANSIT   )
AUTHORITY, *et al.,*          )
                              )
         Defendants.     )

## O R D E R

AND NOW, to wit, this 30th Day of December, 2011, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS ORDERED that the Motion to Dismiss Amended Complaint filed on behalf of Defendants Thomas Borrelli and the City of Erie [35], the Motion to Dismiss filed on behalf of Defendants Erie Metropolitan Transit Authority, Aura Torres, and Michael Will [37], and the Motion to Dismiss Amended Complaint filed on behalf of Defendants the County of Erie and Bradley H. Foulk, deceased [39], shall be, and hereby are, GRANTED, and the above-captioned civil action shall be, and hereby is, DISMISSED with prejudice.

                             s/    <u>Sean J. McLaughlin</u>

                                Sean J. McLaughlin
                                United States District Judge

cm:    All counsel of record.